UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **NCS PEARSON, INC.**<br><br>  Plaintiff,<br><br>v.<br><br>**JOHN DOES (1 THROUGH 21)**,<br><br>  Defendants. | No. 0:20-cv-00594-SRN-ECW<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT EXPEDITED THIRD-PARTY DOE DISCOVERY** |

Plaintiff NCS Pearson, Inc. ("NCS Pearson"), respectfully submits this Memorandum in Support of Plaintiff's Motion for Expedited Discovery.

**I.   INTRODUCTION**

Plaintiff NCS Pearson has been the victim of repeated pseudonymous defamatory emails falsely accusing it and its employees of taking bribes, participating in cartel activity around the world, and compromising the integrity of the exams it is trusted to administer. By altering the header information in their emails to mask their identities and by attacking the employment relationship between NCS Pearson and its personnel, the email senders have also violated the CAN-SPAM Act of 2003. One sender included NCS Pearson's intellectual property in the form of improperly copied exam content. Several of these emails appear coordinated, and at least one violates the Lanham Act by altering an NCS Pearson business communication with the likely effect of confusing the public, customers, and potential customers about the sponsorship

1

of NCS Pearson's business activities. This must stop. To make that happen, NCS Pearson must seek discovery from Google, and possibly others, to identify these Doe Defendants so that it can properly serve them with the summons and complaint and prosecute this litigation.

NCS Pearson therefore seeks leave to serve a third-party subpoena on Google before the Federal Rule of Civil Procedure 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1). NCS Pearson proposes a limited course of discovery that will likely lead to Defendants' identities. Because serving a subpoena on Google may be only the first step in an investigation that ultimately leads to the identification of Defendants, NCS Pearson asks the Court for authority to issue limited follow-up discovery, if necessary, on the leads provided by Google. Because the need to pierce Defendants' anonymity constitutes good cause for any delay in service of the summons and complaint under Federal Rule of Civil Procedure 4(m), NCS Pearson also asks the Court for a reasonable time after ascertaining Defendants' identities to effect service. In addition, under the circumstances, NCS Pearson asks that it be relieved from all requirements to meet and confer pursuant to Local Rule 7.1 (a)(1).

## II.   FACTS

### A. NCS Pearson Provides Electronic Testing Solutions to Clients Around the World.

NCS Pearson is a subsidiary of Pearson plc. NCS Pearson has its principal place of business in Bloomington, Minnesota. NCS Pearson offers innovative computer-based testing solutions through secure electronic test delivery. More than 450 credential owners around the world choose NCS Pearson to help develop, manage, deliver, and grow their testing programs, ranging from online practice tests to secure proctored exams. Dkt. 1 (Compl.) ¶ 2; *see also* Declaration of Brian Friess ¶ 2.

NCS Pearson's operations involve working with credential owners that, for example, require examinations for candidates to earn professional and educational certifications and other credentials. Compl. ¶ 10. To provide its services, NCS Pearson interacts with both credential owners and with testing candidates to coordinate the preparation of, access to, and scoring of, electronic testing. *Id.* ¶ 11.

### B.  Doe Defendants' Misconduct.

Since 2012, NCS Pearson has been operating a security issue referral email address—pearsonvuesecurityteam@pearson.com. Compl. ¶ 12. Over the years since setting up the referral email address, NCS Pearson has received emails portraying the company in a negative light. For example, emails (1) implying

3

that NCS Pearson engages in unethical business practices, (2) making vulgar comments about NCS Pearson employees, and (3) altering external business communications and sending the modified versions to clients as though they represent NCS Pearson's practices and operations. *Id.* ¶ 13; *see also* Friess Decl. ¶ 4. Those same emails have also been sent to the media, government officials in the U.S., Australia, India, and elsewhere, NCS Pearson competitors, and NCS Pearson clients and potential clients. *Id.*

These harassing and defamatory emails are usually sent during major business activities for NCS Pearson and its clients, including when NCS Pearson begins delivering new examinations for a new client or is marketing a new product. Compl. ¶ 14.

NCS Pearson has repeatedly tried to contact the senders for more details about their allegations. The company has also investigated the allegations based on the information provided in the emails. *Id.* ¶ 15. NCS Pearson's investigation typically relies on any contact information provided by the purported "tipster", as well as a search tool called PIPL, and social media sites such as LinkedIn profiles, Facebook, and Instagram accounts to try to identify the senders. *See* Friess Decl. ¶ 5. NCS Pearson was unable to find the true identities of any of the senders complained of here. *Id.*

As one example, NCS Pearson, the media, and NCS Pearson clients received an email from xconifyacademy@gmail.com around April 4, 2019 purporting to be from Tarique Ahmed, Co-Partner of the Xconify Academy in Brussels, Belgium. Compl. ¶ 16. The email falsely alleges that NCS Pearson has instructed its test center network to give preferential treatment to an NCS Pearson client to take market share from a NCS Pearson competitor. The sender of the email altered a confidential communication sent to test centers and then included the altered information in their email. *Id.*

The NCS Pearson team had also received a similar email from the same email address in 2018, in which "he" made disparaging comments about employees. Based on the email address, physical address listed from the sender, and name, NCS Pearson determined that Xconify was once an NCS Pearson Authorized Select test center named XCUELA. But when contacted, XCUELA had no record of any "Tarique Ahmed." *See id.* ¶ 17.

Someone who appears to be a different sender contacted recipients within NCS Pearson, media outlets, competitors, and clients from newhorizonslearningcentre@gmail.com. That sender claimed to be Tony Albert, New Horizon's Computer Learning Centre, East Syracuse, New York. "Tony Albert" claimed that NCS Pearson is "heading for doom because of corrupt officials, customer unfriendly business practices and over confidence." The

sender also alleged that corrupted security personnel within NCS Pearson take kickbacks and allow the sale of client IP, candidate demographics, and other details collected from test centers. *Id.* ¶ 19.

Representative emails from other senders are described in the Complaint. *See id.* ¶¶ 22–39. One sent around July 7, 2016, to NCS Pearson personnel and clients from [wahshaikhy@gmail.com](mailto:wahshaikhy@gmail.com) (purporting to be from Wahjid Shaikh of Madras Computer Centre in India) falsely asserted that NCS Pearson personnel are involved in a kickback scheme and participating in cartel activity. *Id.* ¶ 22. Other emails have similarly accused NCS Pearson personnel of taking kickbacks and engaging in cartel activity and other illegalities in India, Sri Lanka, Australia, the United States, and elsewhere. *See, e.g., id.* ¶¶ 23–39.

The substance of the defamatory allegations is striking. Some senders moreover forwarded defamatory emails from other Doe Defendants, including emails from [xconifyacademy@gmail.com](mailto:xconifyacademy@gmail.com) and [newhorizonslearningcentre@gmail.com](mailto:newhorizonslearningcentre@gmail.com). *Id.* ¶¶ 23–25, 50. NCS Pearson believes that none of the Doe Defendants are who they claim to be in their emails. *Id.* ¶ 40.

    C. **Civil Discovery is Likely to Enable NCS Pearson to Identify Defendants.**

While Plaintiff has tried to investigate Defendants' identities, civil discovery is needed to complete the investigation.

NCS Pearson contacted the institutions purportedly affiliated with Does 1 and 2, who sent emails from xconifyacademy@gmail.com and newhorizonslearningcentre@gmail.com, respectively. Friess Decl. ¶ 6. That outreach revealed that the senders were not who they claimed to be. The same is true of NCS Pearson's investigation of the other senders. *Id.* ¶ 7.

Because Defendants sent their emails through Google's Gmail service, they must have Gmail accounts, or access to accounts. Information about those accounts would likely help identify Defendants. Gmail users must set up an account, which requires at least some identifying information. Google also likely keeps logs of actions taken by an account holder—such as the sending and receiving of email, the redirection of an email server, and other account actions. And it is likely that Defendants had to enter their own email in one or more of these processes. If so, this information, along with the other information Google maintains, is likely to lead to Defendants' identities.

NCS Pearson has tried to seek the information it needs to identify Defendants without compulsory process. On October 8, 2019, it asked Google to preserve all data about the accounts at issue and others that had sent harassing

and defamatory emails to NCS Pearson.[1] *See* Declaration of Jacob Heath ("Heath Decl."), Ex. 1. Google responded ten days later, stating that it would not even preserve data absent "valid legal process." *Id.* Ex. 2. Unless compelled to do so, Google will not even preserve the requested data, much less produce it.

### III. LEGAL ARGUMENT

Seeking discovery to identify a Doe defendant is permitted in the Eighth Circuit. That court has held that a plaintiff "*may* properly sue 'John Doe' to ascertain the ISP subscriber." *Killer Joe Nev., LLC v. Does 1–20*, 807 F.3d 908, 912 (8th Cir. 2015). *Killer Joe*, in turn, relied on *Charter Commc'ns Inc., Subpoena Enf't Matter*, which endorsed precisely the kind of discovery that NCS Pearson seeks here:

> [Plaintiffs] can also employ alternative avenues to seek this information, such as "John Doe" lawsuits. In such lawsuits, many of which are now pending in district courts across the country, [plaintiffs] can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous "John Doe" defendant.

393 F.3d 771, 775 n.3 (8th Cir. 2005) (considering copyright infringement claim).

---

[1] Two senders' accounts, ceosenthilkumar@gmail.com and netexpertsol@gmail.com, were not mentioned in the October 8 letter to Google, because NCS Pearson learned of those emails around October 16, 2019 and December 2019, respectively. But given Google's response to the October 8 letter, there is no reason to think it would have provided information about these accounts either.

And while Rule 26(d) generally prohibits discovery before the parties have conferred under Rule 26(f), there is an exception when a court order allows the discovery. *See* Fed. R. Civ. P. 26(d)(1). Without knowing Defendants' true identities, NCS Pearson cannot confer with Defendants under Rule 26(f), and it cannot identify Defendants without discovery.

As for the standard under which this Court should allow expedited discovery, district courts within this circuit have generally applied a good cause standard. *See Strike 3 Holdings, LLC v. Doe*, 2018 WL 2278110, at *2 (D. Minn. May 18, 2018) (collecting cases). To decide whether that standard is met, courts generally consider several factors:

- The concreteness of the plaintiff's showing of a prima facie case of actionable harm
- The specificity of the discovery request
- The lack of alternative means to obtain the subpoenaed information
- The need for the subpoenaed information to advance the claim
- The objecting party's expectation of privacy

*See id.* at *3.

NCS Pearson's request is justified under those factors: (1) NCS Pearson has actionable claims under the Lanham Act and for defamation and tortious interference; (2) the discovery is calculated to obtain only Defendants' names and

9

locations; (3) NCS Pearson cannot identify Defendants absent discovery; (4) NCS Pearson cannot serve Defendants or take discovery on the merits of its claims without knowing who it is suing; and (5) Defendants' privacy interests are minimal when they misrepresent their identities to falsely accuse companies of committing crimes and when they misleadingly alter a company's business communications.

### A. NCS Pearson Has a Prima Facie Claim of Actionable Harm.

First, NCS Pearson's complaint makes out concrete and actionable claims against Defendants.

#### 1. Lanham Act

To seek relief under section 43(a) of the Lanham Act, NCS Pearson must establish: (1) a false statement of fact about its product or service; (2) that the statement has the tendency to deceive a substantial segment of its audience; (3) that the deception is material; (4) that a defendant caused its false statement to enter interstate commerce; and (5) that NCS Pearson has been or is likely to be injured because of the false statement. *See Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390 (8th Cir. 2004) (outlining elements of Lanham Act section 43(a) claim).

NCS Pearson can show all those things. As its Complaint alleges, John Doe 1 sent an email from the address xconifyacademy@gmail.com to NCS Pearson, its

clients, and the media. Compl. ¶¶ 16–18. That email, purporting to be from "Tarique Ahmed, Co-Partner of the Xconify Academy in Brussels, falsely that NCS Pearson has instructed its test center network to give preferential treatment to an NCS Pearson client to take market share from a competitor. *See* Compl. ¶¶ 16–18. But while an outlandish claim alone would be one thing, John Doe 1 also altered a genuine confidential communication from NCS Pearson and included the manipulated version in his email. *Id.* That manipulation would have the tendency to deceive clients and potential clients about NCS Pearson's practices, and is unquestionably material: the statement makes it seem as though NCS Pearson engaged in anticompetitive and potentially actionable conduct. "[R]eputational harm to an American plaintiff may constitute "some effect" on American commerce" in a Lanham Act claim. *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 971 (9th Cir. 2016). And NCS Pearson is likely to be damaged if any client believes the accusation.

### 2. CAN-SPAM Act

As for the CAN-SPAM claims, NCS Pearson has also stated a prima facie claim. Under 15 U.S.C. § 7704(a)(1), it is unlawful to initiate "the transmission, to a protected computer, of a commercial electronic mail message, or a transactional or relationship message, that contains, or is accompanied by, header information that is materially false or materially misleading."

Those requirements are alleged here. First, NCS Pearson has alleged that Defendants are false senders using materially false or misleading header information. Compl. ¶¶ 48–50. Indeed, NCS Pearson's investigation revealed that at least two purported senders were not who they said they were. *Id.* And because the other Defendants alleged similar—sometimes nearly identical—claims of kickback schemes by NCS Pearson personnel to guarantee test passage or alter test center allocation (and some Defendants forwarded emails from senders who do not appear to exist), NCS Pearson believes that all included false or misleading header information. Second, because virtually all actionable emails also copied NCS Pearson domains and complained of alleged misconduct by NCS Pearson employees, they were transactional or relationship messages under CAN-SPAM. *See Aitken v. Commc'ns Workers of Am.*, 496 F. Supp. 2d 653, 666–67 (E.D. Va. 2007) (denying motion to dismiss CAN-SPAM claims where strangers emailed Verizon employees about their employment relationship with Verizon). Finally, "protected computer" has the same meaning under CAN-SPAM that it has under 18 U.S.C. § 1030(e)(2)(B). That definition includes "effectively all computers with Internet access." *United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) (en banc). NCS Pearson has thus also made out a colorable CAN-SPAM claim.

### 3. Defamation

NCS Pearson has also stated a prima facie case of defamation, which requires only that NCS Pearson show that: "(1) the defamatory statement is communicated to someone other than the plaintiff, (2) the statement is false, and (3) the statement tends to harm the plaintiff's reputation and to lower the plaintiff in the estimation of the community." *Elkharwily v. Mayo Holding Co.*, 823 F.3d 462, 468 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 481 (2016) (internal quotation omitted).

The defamatory emails from the Doe Defendants described in NCS Pearson's complaint are three for three on that score. Each sent pseudonymous emails to the media, U.S. or foreign government officials, NCS Pearson competitors, or NCS Pearson clients and potential clients. Nor did those emails contain merely nonactionable opinion. *Cf. E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 309 F. Supp. 3d 644, 674–76 (D. Minn. 2017) (denying expedited discovery on Does' identities where alleged defamatory statements were opinions that plaintiff's services were "obsolete" and "redundant"). The statements complained of here allege that NCS Pearson and its personnel are participating in kickback schemes all over the world, that the company engages in cartel activity as well as other anticompetitive conduct, and that NCS Pearson's business practices are corrupt and unethical. *See* Compl. ¶¶ 16–39. Those factual

13

claims—that NCS Pearson is committing crimes—are defamatory per se and damaging to NCS Pearson's reputation. This is a prima facie defamation claim.

### 4. Tortious Interference

Finally, NCS Pearson's complaint also makes out an actionable claim for tortious interference. Even absent existing contractual relationships, Minnesota law recognizes tortious interference with business expectancy and prospective relationships. NCS Pearson must allege: (1) the existence of a reasonable expectation of economic advantage; (2) Defendants' knowledge of that advantage; (3) independently tortious or unlawful intentional interference; (4) a reasonable probability that NCS Pearson would have realized its economic advantage; and (5) damages. *See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014).

NCS Pearson has alleged what is required. Not only does NCS Pearson have a reasonable expectation of continuing its existing client relationships, it also expects to expand its services to new clients. Defendants showed their awareness of those expectancies by reaching out to clients, competitors, and the media in the obvious hope of harming NCS Pearson's existing and future relationships. Because the interference was defamatory, it was independently tortious, and NCS Pearson has been or will be damaged: credential owners must protect the integrity of the credentials they award, and doing business with a

14

testing company engaged in bribes and cartel activity would not achieve that. So NCS Pearson has an actionable claim for tortious interference under Minnesota law.

### B. NCS Pearson's Discovery Requests Are Specific and Tailored to Discover Defendants' Identities.

As for specificity, NCS Pearson has attached a copy of the subpoena it proposes serving on Google. That subpoena seeks documents "sufficient to identify the account holder" for each Defendant's email account, information about the communications those email addresses have engaged in, and information about the header information. *See* Heath Decl. Ex. 3 (Proposed Subpoena Requests 1–4).

These requests are specific and calculated to identify Defendants. To be sure, information needed to identify the account holders alone may not identify the email senders with certainty—such as when an account holder's family member used the email address. But complete header information and other data Google collects about the account holders' email activity is likely to help confirm Defendants' identities. Google likely keeps logs of all actions taken by an account holder—such as the sending and receiving of email, the redirection of an email server, and other account actions. For example, it is likely that Defendants had to enter their own email in one or more of these processes. Any, or all, of this information is likely to lead to their identities.

NCS Pearson proposes a limited course of discovery that will likely result in the identification of Defendants. It plans to serve a subpoena on Google to uncover all information that could lead it to discover who created and used the email accounts at issue. See Heath Decl. ¶ 4; Ex. 3. Recognizing that these entities may only be the first step in an investigation that ultimately leads to the identification of Defendants, NCS Pearson further requests authority to issue limited follow-up discovery, if necessary, on the leads provided by the subpoenaed parties.

Assuming timely responses to its subpoenas, NCS Pearson expects to complete the Doe Discovery phase in 180 days. Discovery is therefore warranted.

## C. Only Third-Party Discovery Is Likely to Provide the Requested Information.

Defendants have disguised their identities by sending emails with false or misleading header information. Without knowing who really owns and uses the email accounts at issue, NCS Pearson cannot prosecute this lawsuit.

Pearson's own investigation has confirmed that several email senders are not who they claim to be. But beyond that, information about the email accounts uniquely in Google's possession, custody, or control is needed to proceed.

In responding to NCS Pearson's preservation request, Google stated that it would not even preserve data absent compulsory process. *See* Heath Decl. Ex. 2.

Absent voluntary production from Google, only a subpoena can yield the information NCS Pearson needs.

### D. NCS Pearson Needs the Requested Information to Advance Its Claim.

Without the ability to effect service on Defendants, this case may go no further. NCS Pearson cannot take merits discovery or seek relief from the Court to halt Defendants' actionable conduct. NCS Pearson therefore requires third-party discovery on Google (and potentially others) to proceed at all. This factor therefore supports allowing the requested discovery. *See Strike 3*, 2018 WL 2278110, at *5.

### E. Defendants' Privacy Interests Are Minimal.

NCS Pearson's needs outweigh Defendants' interests in privacy here. *See id.* This is not an instance of anonymous complaints on an online review site or message board. NCS Pearson is not trying to squelch complaints about its services. Instead, Defendants have contacted NCS Pearson, its clients, potential clients, the media, and government officials under fake names and affiliations to falsely accuse NCS Pearson of committing crimes. There is limited—if any—expectation of privacy under those circumstances. Even if there were, the Court could protect Defendants by crafting a suitable protective order. *See id.*

## IV. CONCLUSION.

For these reasons, NCS Pearson requests that the Court grant its motion and empower it to discover Defendants' identities.

Dated: May 1, 2020                             Respectfully submitted,

ROBINS KAPLAN LLP


By: */s/ Denise S. Rahne*
        Denise S. Rahne (0331314)

800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
612-349-8500


ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Jacob Heath*
        Jacob Heath (*pro hac* pending)

1000 Marsh Road
Menlo Park, CA 94025
650-614-7400

**Attorneys for Plaintiff NCS Pearson**