# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| NCS PEARSON, INC, | Case No. 20-cv-594 (SRN/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| JOHN DOES (1 THROUGH 21), | |
| Defendants. | |

This matter is before the Court on NCS Pearson, Inc.'s Motion for Leave to Conduct Expedited Third-Party Doe Discovery (Dkt. 6). For the reasons stated below, the Motion is denied without prejudice.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff NCS Pearson, Inc. ("NCS Pearson" or "Plaintiff") offers computer-based testing solutions through secure, electronic test delivery. (Dkt. 1 ¶ 2.) More than 450 credential owners around the world choose NCS Pearson to help develop, manage, deliver, and grow their testing programs, ranging from online practice tests to secure proctored exams. (Dkt. 1 ¶ 2.) NCS Pearson's services require it to work with credential owners that may, for example, require examinations for candidates to earn professional or educational certifications. (Dkt. 9 ¶ 2.)

---

[1] For purposes of this motion, the Court recites the factual allegations in the Complaint (Dkt. 1).

NCS Pearson has brought causes of action against twenty-one JOHN DOES for (1) violation of the Lanham Act, 15 U.S.C. § 1051 et seq.; (2) violation of the CAN-SPAM Act of 2003, 15 U.S.C. § 7701 et seq.; (3) defamation; and (4) tortious interference with business expectancy. (Dkt. 1 ¶ 1.) NCS Pearson seeks injunctive relief, monetary damages, and other appropriate relief to stop Defendants' harassing and defamatory emails and the misleading alteration of its confidential communications that is likely to cause confusion over the origin, sponsorship, or approval of NCS Pearson's commercial activities. (*Id.* ¶ 1.) NCS Pearson, media outlets, and NCS Pearson clients have received several defamatory emails that have portrayed NCS Pearson and its employees in a negative light, including: emails (1) implying that NCS Pearson engages in unethical business practices, (2) making vulgar comments about NCS Pearson employees, (3) altering external business communications and sending the modified versions to clients as though they represent NCS Pearson's practices and operations, and (4) initiating the transmission of emails with materially false or misleading header information. (*Id.* ¶ 13.)

As to JOHN DOE 1, the Complaint alleges that on or around April 4, 2019, NCS Pearson, the media, and NCS Pearson clients received an email from xconifyacademy@gmail.com purporting to be from Tarique Ahmed, Co-Partner of the Xconify Academy in Brussels, Belgium. (*Id.* ¶ 16.) The email falsely alleges that NCS Pearson has instructed its test center network to give preferential treatment to an NCS Pearson client to take market share from an NCS Pearson competitor. (*Id.* ¶ 16.) The sender of the email altered a confidential communication sent to test centers and then

included the altered information in their email.  (*Id.* ¶ 16.)  NCS Pearson also received a similar email from the same email address in 2018, in which "he" made disparaging comments about employees.  (*Id.* ¶ 17.)  Based on the email address, physical address listed from the sender, and name, it appears that Xconify was once an NCS Pearson Authorized Select test center named XCUELA.  (*Id.* ¶ 17.)  On information and belief, that organization had no record of a person named Tarique Ahmed.  (*Id.* ¶ 17.)  As part of the present Motion, Plaintiff attached a copy of the April 4 email that it initially forwarded to Google, Inc. ("Google"), which contain the alleged representations and the purported altered email from NCS Pearson.  (Dkt. 10-1 at 34 through 39 of 47.)

In addition, on or around April 15, 2019, a person using the xconifyacademy@gmail.com email address contacted NCS Pearson, its clients, and the media, and falsely claimed that NCS Pearson is engaged in "unethical business practices," described several current and former NCS Pearson employees as "corrupt," and claimed falsely that NCS Pearson and its employees receive kickbacks for manipulating certain test-taking markets.  (Dkt. 1 ¶ 18.)

As to JOHN DOE 2, the Complaint alleges that on or around April 5, 2019, an email was sent to a variety of recipients within NCS Pearson, media outlets, competitors and clients from newhorizonslearningcentre@gmail.com, with the sender claiming to be Tony Albert, New Horizon's Computer Learning Centre, East Syracuse, New York.  (*Id.* ¶ 19.)  This individual alleges that NCS Pearson is "heading for doom because of corrupt officials, customer unfriendly business practices and over confidence."  (*Id.* ¶ 19.)  The individual further alleges that corrupted security personnel are given kickbacks and allow

3

the sale of client IP, candidate demographics, and other details collected from test centers. (*Id.* ¶ 19.) The sender purporting to be "Tony Albert" has no affiliation with New Horizon's East Syracuse Computer Learning Center. (*Id.* ¶ 21.)

As to JOHN DOE 3, the Complaint alleges that on or around July 7, 2016, an email was sent to NCS Pearson personnel and clients from wahshaikhy@gmail.com, purporting to be from Wahjid Shaikh of Madras Computer Centre in India, which falsely claims that NCS Pearson personnel are involved in a kickback scheme and participating in cartel activity. (*Id.* ¶ 22.)

With respect to JOHN DOES 4-5, the Complaint alleges that on or around March 20, 2019, an email was sent to NCS Pearson personnel, competitors, clients, and Indian government email addresses from pradyutmishraiijt@gmail.com, purporting to be from Pradyut Mishra. This email forwarded an email from neerajawasthinewhorizon@gmail.com purporting to be from Neeraj Awasthi at New Horizons of New Delhi, India. (*Id.* ¶ 23.) The forwarded email falsely accuses NCS Pearson and others of tax avoidance, cartel activity including blacklisting of uncooperative participants, and cash kickbacks. (*Id.*) That email also forwarded another purporting to be from Pradyut Mishra that accused NCS Pearson of taking kickbacks. (*Id.*) Neither Pradyut Mishra nor Neeraj Awasthi are who they purport to be. (*Id.*) The email string also includes a defamatory email from xconifyacademy@gmail.com purporting to be from Tarique Ahmed, and therefore NCS Pearson also believes that the sender or senders are working with the other Defendants. (*Id.*)

As to JOHN DOE 6, an email from prudentworldtech@gmail.com purporting to be from Charles Truman of Logitrain was sent on or around May 15, 2019 to NCS Pearson personnel, the media, NCS Pearson clients and competitors, and United States and foreign government email addresses. (*Id.* ¶ 24.) The email falsely claimed that NCS Pearson was participating in an immigration fraud scheme in Australia, that the company is corrupt, and is engaging in "malpractices" in the United States and Australia. (*Id.* ¶ 24.) The email forwarded another defamatory email from xconifyacademy@gmail.com. (*Id.*) On information and belief, the real sender is not Charles Truman. (*Id.*)

As to JOHN DOE 7, the Complaint alleges that on or around April 11, 2019, an email from surynarayanbiz@gmail.com purporting to be from Suporte Informatica of Brazil was sent to NCS Pearson, its customers and competitors, and various media outlets, which falsely accused NCS Pearson of being in a "monopoly position" and forwarded an email from prudentworldtech@gmail.com accusing NCS Pearson personnel of participating in a kickback scheme among other unethical conduct. (*Id.* ¶ 25.) Another email from "Suporte Informatica" on or around May 22, 2019 to NCS Pearson personnel and various government email addresses in the United States, Australia, and other countries, forwards another defamatory email from "Tony Albert" of New Horizons. (*Id.* ¶ 25.)

As to JOHN DOE 8, the Complaint alleges that emails have been sent to NCS Pearson, United States and foreign government email addresses, and the media from sachinsonigimit@gmail.com, purporting to be from Sachin Soni. (*Id.* ¶ 26.) One email sent on or around September 18, 2018 falsely accuses NCS Pearson personnel of taking

bribes in India and another email sent on or around October 9, 2018 falsely accuses NCS Pearson personnel of taking kickbacks in exchange for preferential allotments of test centers in India.  (*Id.* ¶ 26.)  NCS Pearson sent an example of offending emails from this account to Google, but they do not appear to include the emails referenced in the Complaint.  (Dkt. 10-1 at 7-32 of 47.)

With respect to JOHN DOE 9, the Complaint asserts that NCS Pearson and its competitors have received emails from sanjeevshris@gmail.com purporting to be from Sanjeev Shrivastava of India, including one on October 24, 2018 where the sender accused NCS Pearson personnel of being "a petty thief" and of "openly promoting unethical and unfair practices in assessment" such as guaranteed exam passing in exchange for bribes.  (Dkt. 1 ¶ 27.)

As to JOHN DOE 10, the Complaint asserts that on or around May 30, 2019, NCS Pearson and a competitor received an email from sminternetwork@gmail.com, purporting to be from Mohd Arif, which falsely described NCS Pearson as "nothing but house of cards [sic]" and accused the company and its personnel of corruption and engaging in cartel activity in India.  (*Id.* ¶ 28.)

As to JOHN DOE 11, the Complaint alleges that on or around August 7, 2018, NCS Pearson and its customers received an email from swapnikale1@gmail.com purporting to be from Swapnil Kale of the QMS Academy in India, and the email falsely claimed that NCS Pearson personnel and affiliates were participating in a kickback scheme in India and "committing a crime."  (*Id.* ¶ 29.)

With respect to JOHN DOE 12, the Complaint alleges that on or around August 6, 2019, NCS Pearson, its customers and competitors, and the media received an email from gowrisit007@gmail.com purporting to be from Gowri S. of Elitech Consulting PVT in India, which falsely accused NCS Pearson and its competitors of engaging in "corrupt cartel" activity in India. (*Id.* ¶ 30.) As part of the present Motion, Plaintiff attached a copy of the August 6 email that it initially forwarded to Google. (Dkt. 10-1 at 45-47 of 47.)

As to JOHN DOE 13, the Complaint alleges that on or around October 10, 2018, an email was sent to NCS Pearson, its potential customers, and its competitors from anuragsinsinwarhorizon@gmail.com purporting to be from Anurag Sinsinwar of New Horizon in India and the email falsely claims that NCS Pearson test centers in India are involved in offering exam passage for bribes and that former NCS Pearson personnel are involved in some sort of "proxy exam cartel." (Dkt. 1 ¶ 31.)

With respect to JOHN DOE 14, on or around October 4, 2017, an email was sent to NCS Pearson, and customers from gauravascentcollege@gmail.com purporting to be from Gaurav Kalra of Brij Security Solution in India, which falsely accuses NCS Pearson test centers of participating in a kickback scheme and other "unethical deals." (*Id.* ¶ 32.)

As to JOHN DOE 15, the Complaint alleges that on or around May 30, 2018, NCS Pearson, its competitors, the media, and various foreign government email addresses received an email from jamborieducation@gmail.com purporting to be from Jamboree Education and that this email accused NCS Pearson and a competitor of participating in

7

an exam center cartel and a related bribery scheme in India, saying that NCS Pearson is "IN VERGE [sic] OF LOSING CREDIBILITY." (*Id.* ¶ 33.)

As it relates to JOHN DOE 16, the Complaint asserts that on or around December 26, 2016, NCS Pearson, and its customers received an email from mon.agrawalkaur@gmail.com purporting to be from Monika Agrawal, which falsely accuses NCS Pearson of running an organization engaged in corruption and bribery in India, Pakistan, Nepal, and Bangladesh. (*Id.* ¶ 34.) The email also describes purported kickbacks paid to "corrupt" NCS Pearson personnel. (*Id.* ¶ 34.)

With regard to JOHN DOE 17, the Complaint alleges that on or around January 15, 2019, NCS Pearson customers received an email from prasana.rks@gmail.com purporting to be from Prasanna Kumar of Sudharsan Network Solutions in Bangalore, India, which falsely claimed that NCS Pearson test centers participated in a kickback scheme involving electronic testing in India. (*Id.* ¶ 35.)

As it relates to JOHN DOE 18, the Complaint alleges that on or around December 24, 2018, NCS Pearson, its customers, and email addresses associated with the Sri Lankan government received an email from 360informer1@gmail.com purporting to be from Pravin Gupta, the Director of 360 Informer in Panipat, India, and this email falsely alleged a scheme in which NCS Pearson personnel charged exam takers extra to pass certification exams in a kickback scheme in India and Sri Lanka. (*Id.* ¶ 36.)

As it relates to JOHN DOE 18, the Complaint alleges that on or around August 24, 2015, NCS Pearson and its customers received an email from shafaqmla@gmail.com purporting to be from Shafaq Moinwala of Raj Communications in India. (*Id.* ¶ 37.) The

8

email falsely claimed that NCS Pearson employees were engaged in a scheme involving "preferential test center allotment done for kick backs [sic]." (*Id.*) The email repeatedly described NCS Pearson employees as "corrupt." (*Id.*)

As it relates to JOHN DOE 20, the Complaint asserts that on or around October 16, 2019, an email from ceosenthilkumar@gmail.com, purporting to be from Senthil Kumar of the Kalvi Institutes in Madurai, India, was sent to NCS Pearson, and to, in the sender's own words, "professional, academic, government test owners, immigration. [sic] investigation and media authorities." (*Id.* ¶ 38.) Plaintiff alleges that the email falsely claimed that NCS Pearson and its personnel participated in cartel activity and testing fraud in India, along with other "malpractices" and included NCS Pearson's stolen intellectual property in the form of exam content. (*Id.*)

In addition, as to JOHN DOE 21, the Complaint alleges that between December 30, 2019 and January 7, 2020, emails from netexpertsol@gmail.com, purporting to be from Shaila Badar, were sent to a recently signed NCS Pearson client in Sri Lanka and to Sri Lankan government addresses. (*Id.* ¶ 39.) The emails falsely claimed that NCS Pearson is running a test-publishing and third-party software scam to obtain kickbacks. (*Id.*) The emails have jeopardized NCS Pearson's relationship and contract with its new client. (*Id.*)

NCS Pearson asserts that it has attempted to identify the senders of the emails set forth in the Complaint, as well as contact the institutions identified in the emails, to no avail. (Dkt. 9 ¶¶ 5-7.) This included reaching out to Xconify Academy and New

Horizons Learning Centre, only to discover that the purported senders do not exist or have no affiliation with the institutions. (*Id.* ¶ 6.)

On October 9, 2019, NCS Pearson's counsel sent a letter to Google requesting that it suspend the offending google email accounts and that it preserve all information regarding the email addresses. (Dkt. 10-1.) The letter attached an example of the offending emails. (*Id.*) There was no request to Google for the identity of these individuals. Google made no substantive response, only notifying Plaintiff that would need legal process to preserve the information. (Dkt. 10-2.)

Plaintiff now seeks relief from this Court in the form of the issuance of subpoena to Google under Rule 45 of the Federal Rules of Civil Procedure, demanding the following production of documents and information:

> 1. All Documents, records, or other information sufficient to identify the account holder for each email account identified in Appendix A, including but not limited to that Person's or entity's full name, physical address, other email address provided to you by that Person, telephone number, account information, account sign-up records, account activity, payment details (present and historical), history of contact information, and any other information passively collected by you about that Person or entity (e.g., IP address, browser and MAC information).
>
> 2. All Documents, records, or other information concerning any and all email messages from January 1, 2015 to the present sent from or received by the email addresses identified in Appendix A including but not limited to, any and all active and/or archived email messages exchanged between these email accounts and the header information associated with said email messages; any and all SMTP logs associated with said email messages; IP connection logs (present and historical) associated with said email messages; IP connection logs (present and historical) associated with said email messages; and any other information actively or passively connected by you about any and all email messages exchanged (e.g., IP address, browser, and MAC information).

3. All Documents, records, or other information sufficient to show the header information, including but not limited to all IP addresses in the header, of all emails sent from or received by each email account identified in Appendix A from January 1, 2015 to the present.

4. Documents, records, or other information sufficient to show any other information actively or passively collected by you, including but not limited to IP addresses, browser information and MAC information, associated with each email account identified in Appendix A from January 1, 2015 to the present.

(Dkt. 10-3.)

## II. LEGAL STANDARD

Rule 26(d) of the Federal Rules of Civil Procedure prohibits a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). While the Eighth Circuit has not ruled on a standard governing whether early discovery is appropriate, district courts within the Eighth Circuit "generally utilize a 'good cause' standard" that considers the five following factors in deciding whether to permit early discovery using subpoenas:

> (1) the concreteness of the plaintiff's showing of a prima facie claim of actionable harm, (2) the specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) the need for the subpoenaed information to advance the claim, and (5) the objecting party's expectation of privacy.

*Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 555-56 (D. Minn. 2019) (citations omitted). This test is meant to protect anonymous speech effected by an order of this Court, given that it may implicate protected speech under the First Amendment. *See E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018, 1024 (D. Minn. 2016). "The party seeking the discovery bears the burden of showing good cause, and

11

the subject matter of the request should be narrowly tailored in scope." *Ensor v. Does 1-15*, No. A-19-CV-00625-LY, 2019 WL 4648486, at *1 (W.D. Tex. Sept. 23, 2019) (quotation marks and citation omitted). Given this legal standard, the Court examines the propriety of Plaintiff's request for early discovery.

### III. ANALYSIS

#### A. Prima Facie Claim

With respect to the prima facie requirement, courts in this District have concluded that:

> [T]he plaintiff **must produce** prima facie support for all of the elements of his or her case that are within his or her control.). Requiring at least that much ensures that the plaintiff is not merely seeking to harass or embarrass the speaker or stifle legitimate criticism.

*E. Coast Test Prep*, 167 F. Supp. 3d at 1025 (emphasis added) (citing *Doe I v. Individuals*, 561 F. Supp. 2d 249, 256 (D. Conn. 2008) (quotation marks and citation omitted); *see also SaleHoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1216 (W.D. Wash. 2010) ("Next, the plaintiff must, in general, allege a facially valid cause of action and produce prima facie evidence to support all of the elements of the cause of action within his or her control."). Generally, prima facie support is "'the establishment of a legally required rebuttable presumption' or where 'a party's production of enough evidence allows the fact-trier to infer the fact at issue and rule in the party's favor.'" *Devin v. Schwan's Home Servs., Inc.*, No. CIV. 04-4555 RHKAJB, 2005 WL 1323919, at *3 (D. Minn. May 20, 2005) (quoting Black's Law Dictionary 1228 (8th ed. 2004)) (generally defining a prima facie case) (cleaned up).

Here, Plaintiff only provided a few of the offending emails alleged in its Complaint and only with respect to JOHN DOES 1 and 12. [2] (Dkt. 10-1.) Given the incomplete record, the Court finds that Plaintiff has not established the requisite prima facie claim of actionable harm as to each Defendant whose information is sought from Google. To the extent that Plaintiff wishes to renew its motion, Plaintiff should submit copies of all of the emails in its possession that it claims in its Complaint are actionable and set forth how these emails or other evidence meet the specific elements of at least one of its causes of action on a Defendant-by-Defendant basis. While the Court is cognizant that Plaintiff may not have all of the evidence it would possess at summary judgment to meet the elements of its claims, given the very early stage of this case, where Plaintiff is basing its claims on communications already in its possession, and given the privacy and First Amendment implications of the requested discovery, it is incumbent on Plaintiff to provide to the Court with at least all of the offending emails that it is basing its claims upon and explain how those emails specifically meet the elements of at least one claim as to each JOHN DOE.

---

[2] The Court notes that it does not appear that NCS Pearson forwarded to Google the April 15, 2019 email referenced in the Complaint as to JOHN DOE 1, and therefore it is not presently available for the Court's review. In addition, as set forth above, while Plaintiff filed offending emails it sent to Google that were sent by JOHN DOE 8, Plaintiff does not appear to have filed the emails referenced in the Complaint as to JOHN DOE 8 for the Court's review. Moreover, even assuming that Plaintiff had set forth how the specific emails at issue included in the Motion papers and referenced in the Complaint meet the elements of any of the alleged claims as to certain of the JOHN DOES, the Court declines to engage in piecemeal subpoenas to Google regarding this matter for the purposes of judicial efficiency and in order to avoid unnecessary burden and confusion to a non-party.

**B.    Specificity of Requests**

The Court also finds that the Motion should be denied on the basis that the requested discovery is overly broad.  Courts in this District have concluded that a request for early discovery related to John Doe Defendants is sufficiently specific where it only seeks evidence related to the identity of these individuals.  *See Strike 3 Holdings, LLC*, 330 F.R.D. at 556 (quoting *Strike 3 Holdings, LLC v. John Doe*, No. 18-cv-774 (DWF/DTS), 2018 WL 4210202 (D. Minn. Sept. 4, 2018)) ("'Plaintiff's discovery request is specific because it seeks only Defendant's name and address.'").  The Court agrees that the name and contact information of the account owner, as well as the ISP information related to an email account and other email addresses associated with the account, are relevant and sufficiently tailored to ultimately uncover the identity of the Defendants.  However, the proposed subpoena goes much further, going so far as to ask for "any and all active and/or archived email messages exchanged between these email accounts" as far back as 2015.  Such a broad request amounts to a fishing expedition and seeks discovery that should be available from the Defendants once they are identified and served.

Accordingly, any memorandum accompanying a revised subpoena should include specific argument why the information sought from Google is necessary and specifically tailored to identifying those who allegedly emailed the offending communications at issue in the Complaint.

**C.     Conclusion**[3]

For all these reasons the Court denies the Motion without prejudice.

## IV.     ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.     NCS Pearson, Inc.'s Motion for Leave to Conduct Expedited Third-Party Doe Discovery (Dkt. 6) be **DENIED WITHOUT PREJUDICE**.

2.     To the extent that Plaintiff seeks to renew its motion it will be required to have a hearing before the Court.


DATED: June 16, 2020                                          *s/Elizabeth Cowan Wright*
                                                              ELIZABETH COWAN WRIGHT
                                                              United States Magistrate Judge

---

[3] While the Court is satisfied that Plaintiff needs to identify the JOHN DOES for its action to proceed and that it appears that Google will not comply with its requests for information without a Court order, this Court notes that any renewed motion should also outline all attempts, using declarations, to contact each of the JOHN DOE defendants, not just for emails sent from xconifyacademy@gmail.com and newhorizonslearningcentre@gmail.com.  (*See* Dkt. 9 ¶¶ 6-7.)