## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| NCS PEARSON, INC., | Case No. 20-cv-594 (SRN/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| JOHN DOES (1 THROUGH 21), | |
| Defendants. | |

This matter is before the Court on NCS Pearson, Inc.'s Renewed Motion for Leave to Conduct Expedited Third-Party Doe Discovery (Dkt. 14).

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff NCS Pearson, Inc. ("NCS Pearson" or "Plaintiff") offers computer-based testing solutions through secure, electronic test delivery. (Dkt. 1 ¶ 2.) More than 450 credential owners around the world choose NCS Pearson to help develop, manage, deliver, and grow their testing programs, ranging from online practice tests to secure proctored exams. (*Id.*) NCS Pearson's services require it to work with credential owners that may, for example, require examinations for candidates to earn professional or educational certifications. (Dkt. 9 ¶ 2.)

NCS Pearson has brought causes of action against twenty-one JOHN DOES for (1) violation of the Lanham Act, 15 U.S.C. § 1051 et seq.; (2) violation of the CAN-

---

[1]  For purposes of this motion, the Court recites the factual allegations in the Complaint (Dkt. 1).

SPAM Act of 2003, 15 U.S.C. § 7701 et seq.; (3) defamation; and (4) tortious interference with business expectancy.  (Dkt. 1 ¶ 1.)  NCS Pearson seeks injunctive relief, monetary damages, and other appropriate relief to stop Defendants' harassing and defamatory emails and the misleading alteration of its confidential communications that is likely to cause confusion over the origin, sponsorship, or approval of NCS Pearson's commercial activities.  (*Id.*)  NCS Pearson, media outlets, and NCS Pearson clients have received several defamatory emails that have portrayed NCS Pearson and its employees in a negative light, including: emails (1) implying that NCS Pearson engages in unethical business practices, (2) making vulgar comments about NCS Pearson employees, (3) altering external business communications and sending the modified versions to clients as though they represent NCS Pearson's practices and operations, and (4) initiating the transmission of emails with materially false or misleading header information.  (*Id.* ¶ 13.)

As to JOHN DOE 1, the Complaint alleges that on or around April 4, 2019, NCS Pearson, the media, and NCS Pearson clients received an email from xconifyacademy@gmail.com purporting to be from Tarique Ahmed, Co-Partner of the Xconify Academy in Brussels, Belgium.  (*Id.* ¶ 16.)  The email falsely alleged that NCS Pearson has instructed its test center network to give preferential treatment to an NCS Pearson client to take market share from an NCS Pearson competitor.  (*Id.*)  The sender of the email altered a confidential communication sent to test centers and then included the altered information in their email.  (*Id.*)  NCS Pearson also received a similar email from the same email address in 2018, in which "he" made disparaging comments about employees.  (*Id.* ¶ 17.)  Based on the email address, physical address listed from the

sender, and name, it appears that Xconify was once an NCS Pearson Authorized Select test center named XCUELA. (*Id.*) On information and belief, that organization had no record of a person named Tarique Ahmed. (*Id.*) As part of the present Motion, Plaintiff attached a copy of the April 4 email that it initially forwarded to Google, Inc. ("Google"), which contains the alleged representations and the purported altered email from NCS Pearson. (Dkt. 10-1 at 34 through 39 of 47.)[2]

In addition, on or around April 15, 2019, a person using the xconifyacademy@gmail.com email address contacted NCS Pearson, its clients, and the media, and falsely claimed that NCS Pearson is engaged in "unethical business practices," described several current and former NCS Pearson employees as "corrupt," and falsely claimed that NCS Pearson and its employees receive kickbacks for manipulating certain test-taking markets. (Dkt. 1 ¶ 18.)

As to JOHN DOE 2, the Complaint alleges that on or around April 5, 2019, an email was sent to a variety of recipients within NCS Pearson, media outlets, competitors, and clients from newhorizonslearningcentre@gmail.com, with the sender claiming to be Tony Albert, New Horizon's Computer Learning Centre, East Syracuse, New York. (*Id.* ¶ 19.) This individual alleged that NCS Pearson is "heading for doom because of corrupt officials, customer unfriendly business practices and over confidence." (*Id.*) The individual further alleged that corrupted security personnel are given kickbacks and allow the sale of client IP, candidate demographics, and other details collected from test

---

[2]    Page numbers refer to the CM/ECF system's pagination unless otherwise indicated.

centers.  (*Id.*)  The sender purporting to be "Tony Albert" has no affiliation with New

Horizon's East Syracuse Computer Learning Center.  (*Id.* ¶ 21.)

As to JOHN DOE 3, the Complaint alleges that on or around July 7, 2016, an

email was sent to NCS Pearson personnel and clients from wahshaikhy@gmail.com,

purporting to be from Wahjid Shaikh of Madras Computer Centre in India, which falsely

claimed that NCS Pearson personnel are involved in a kickback scheme and participating

in cartel activity.  (*Id.* ¶ 22.)

With respect to JOHN DOES 4-5, the Complaint alleges that on or around March

20, 2019, an email was sent to NCS Pearson personnel, competitors, and clients, as well

as Indian government email addresses, from pradyutmishraiijt@gmail.com, purporting to

be from Pradyut Mishra.  This email forwarded an email from

neerajawasthinewhorizon@gmail.com purporting to be from Neeraj Awasthi at New

Horizons of New Delhi, India.  (*Id.* ¶ 23.)  The forwarded email falsely accused NCS

Pearson and others of tax avoidance, cartel activity including blacklisting of

uncooperative participants, and cash kickbacks.  (*Id.*)  That email also forwarded another

purporting to be from Pradyut Mishra that accused NCS Pearson of taking kickbacks.

(*Id.*)  Neither Pradyut Mishra nor Neeraj Awasthi are who they purport to be.  (*Id.*)  The

email string also includes a defamatory email from xconifyacademy@gmail.com

purporting to be from Tarique Ahmed, and therefore NCS Pearson also believes that the

sender or senders are working with the other Defendants.  (*Id.*)

As to JOHN DOE 6, an email from prudentworldtech@gmail.com purporting to

be from Charles Truman of Logitrain was sent on or around May 15, 2019 to NCS

Pearson personnel, the media, NCS Pearson clients and competitors, and United States and foreign government email addresses.  (*Id.* ¶ 24.)  The email falsely claimed that NCS Pearson was participating in an immigration fraud scheme in Australia, is corrupt, and is engaging in "malpractices" in the United States and Australia.  (*Id.*)  The email forwarded another defamatory email from xconifyacademy@gmail.com.  (*Id.*)  On information and belief, the real sender is not Charles Truman.  (*Id.*)

As to JOHN DOE 7, the Complaint alleges that on or around April 11, 2019, an email from surynarayanbiz@gmail.com purporting to be from Suporte Informatica of Brazil was sent to NCS Pearson, its customers and competitors, and various media outlets, which falsely accused NCS Pearson of being in a "monopoly position" and forwarded an email from prudentworldtech@gmail.com accusing NCS Pearson personnel of participating in a kickback scheme, among other unethical conduct.  (*Id.* ¶ 25.)  Another email from "Suporte Informatica" on or around May 22, 2019 to NCS Pearson personnel and various government email addresses in the United States, Australia, and other countries forwards another defamatory email from "Tony Albert" of New Horizons.  (*Id.*)

As to JOHN DOE 8, the Complaint alleges that emails have been sent to NCS Pearson, United States and foreign government email addresses, and the media from sachinsonigimit@gmail.com, purporting to be from Sachin Soni.  (*Id.* ¶ 26.)  One email sent on or around September 18, 2018 falsely accused NCS Pearson personnel of taking bribes in India and another email sent on or around October 9, 2018 falsely accused NCS Pearson personnel of taking kickbacks in exchange for preferential allotments of test

centers in India.  (*Id.*)  NCS Pearson sent an example of offending emails from this account to Google, but they do not appear to include the emails referenced in the Complaint.  (Dkt. 10-1 at 7-32 of 47.)

With respect to JOHN DOE 9, the Complaint alleges that NCS Pearson and its competitors have received emails from sanjeevshris@gmail.com purporting to be from Sanjeev Shrivastava of India, including one on October 24, 2018 where the sender accused NCS Pearson personnel of being "a petty thief" and of "openly promoting unethical and unfair practices in assessment" such as guaranteed exam passing in exchange for bribes.  (Dkt. 1 ¶ 27.)

As to JOHN DOE 10, the Complaint alleges that on or around May 30, 2019, NCS Pearson and a competitor received an email from sminternetwork@gmail.com, purporting to be from Mohd Arif, which falsely described NCS Pearson as "nothing but house of cards [sic]" and accused the company and its personnel of corruption and engaging in cartel activity in India.  (*Id.* ¶ 28.)

As to JOHN DOE 11, the Complaint alleges that on or around August 7, 2018, NCS Pearson and its customers received an email from swapnikale1@gmail.com purporting to be from Swapnil Kale of the QMS Academy in India, and the email falsely claimed that NCS Pearson personnel and affiliates were participating in a kickback scheme in India and "committing a crime."  (*Id.* ¶ 29.)

With respect to JOHN DOE 12, the Complaint alleges that on or around August 6, 2019, NCS Pearson, its customers and competitors, and the media received an email from gowrisit007@gmail.com purporting to be from Gowri S. of Elitech Consulting PVT in

India, which falsely accused NCS Pearson and its competitors of engaging in "corrupt cartel" activity in India. (*Id.* ¶ 30.)  As part of the present Motion, Plaintiff attached a copy of the August 6 email that it initially forwarded to Google. (Dkt. 10-1 at 45-47 of 47.)

As to JOHN DOE 13, the Complaint alleges that on or around October 10, 2018, an email was sent to NCS Pearson, its potential customers, and its competitors from anuragsinsinwarhorizon@gmail.com purporting to be from Anurag Sinsinwar of New Horizon in India and the email falsely claimed that NCS Pearson test centers in India are involved in offering exam passage for bribes and that former NCS Pearson personnel are involved in some sort of "proxy exam cartel." (Dkt. 1 ¶ 31.)

With respect to JOHN DOE 14, on or around October 4, 2017, an email was sent to NCS Pearson, and customers from gauravascentcollege@gmail.com purporting to be from Gaurav Kalra of Brij Security Solution in India, which falsely accused NCS Pearson test centers of participating in a kickback scheme and other "unethical deals." (*Id.* ¶ 32.)

As to JOHN DOE 15, the Complaint alleges that on or around May 30, 2018, NCS Pearson, its competitors, the media, and various foreign government email addresses received an email from jamborieducation@gmail.com purporting to be from Jamboree Education and that this email accused NCS Pearson and a competitor of participating in an exam center cartel and a related bribery scheme in India, saying that NCS Pearson is "IN VERGE [sic] OF LOSING CREDIBILITY." (*Id.* ¶ 33.)

As it relates to JOHN DOE 16, the Complaint alleges that on or around December 26, 2016, NCS Pearson, and its customers received an email from

mon.agrawalkaur@gmail.com purporting to be from Monika Agrawal, which falsely accused NCS Pearson of running an organization engaged in corruption and bribery in India, Pakistan, Nepal, and Bangladesh.  (*Id.* ¶ 34.)  The email also described purported kickbacks paid to "corrupt" NCS Pearson personnel.  (*Id.*)

With regard to JOHN DOE 17, the Complaint alleges that on or around January 15, 2019, NCS Pearson customers received an email from prasana.rks@gmail.com purporting to be from Prasanna Kumar of Sudharsan Network Solutions in Bangalore, India, which falsely claimed that NCS Pearson test centers participated in a kickback scheme involving electronic testing in India.  (*Id.* ¶ 35.)

As it relates to JOHN DOE 18, the Complaint alleges that on or around December 24, 2018, NCS Pearson, its customers, and email addresses associated with the Sri Lankan government received an email from 360informer1@gmail.com purporting to be from Pravin Gupta, the Director of 360 Informer in Panipat, India, and this email falsely alleged a scheme in which NCS Pearson personnel charged exam takers extra to pass certification exams in a kickback scheme in India and Sri Lanka.  (*Id.* ¶ 36.)

As it relates to JOHN DOE 18, the Complaint alleges that on or around August 24, 2015, NCS Pearson and its customers received an email from shafaqmla@gmail.com purporting to be from Shafaq Moinwala of Raj Communications in India.  (*Id.* ¶ 37.)  The email falsely claimed that NCS Pearson employees were engaged in a scheme involving "preferential test center allotment done for kick backs [sic]."  (*Id.*)  The email repeatedly described NCS Pearson employees as "corrupt."  (*Id.*)

As it relates to JOHN DOE 20, the Complaint asserts that on or around October 16, 2019, an email from ceosenthilkumar@gmail.com, purporting to be from Senthil Kumar of the Kalvi Institutes in Madurai, India, was sent to NCS Pearson, and to, in the sender's own words, "professional, academic, government test owners, immigration. [sic] investigation and media authorities." (*Id.* ¶ 38.)  Plaintiff alleges that the email falsely claimed that NCS Pearson and its personnel participated in cartel activity and testing fraud in India, along with other "malpractices" and included NCS Pearson's stolen intellectual property in the form of exam content. (*Id.*)

In addition, as to JOHN DOE 21, the Complaint alleges that between December 30, 2019 and January 7, 2020, emails from netexpertsol@gmail.com, purporting to be from Shaila Badar, were sent to a recently signed NCS Pearson client in Sri Lanka and to Sri Lankan government addresses. (*Id.* ¶ 39.)  The emails falsely claimed that NCS Pearson is running a test-publishing and third-party software scam to obtain kickbacks. (*Id.*)  The emails have jeopardized NCS Pearson's relationship and contract with its new client. (*Id.*)

On October 9, 2019, NCS Pearson's counsel sent a letter to Google requesting that it suspend the offending Google email accounts and that it preserve all information regarding the email addresses. (Dkt. 10-1.)  The letter attached an example of the offending emails. (*Id.*)  There was no request to Google for the identity of these individuals.  Google made no substantive response, only notifying Plaintiff that would need legal process to preserve the information. (Dkt. 10-2.)

On May 1, 2020, NCS Pearson filed its initial Motion for Leave to Conduct

Expedited Third-Party Doe Discovery (Dkt. 6), seeking relief from this Court in the form

of the issuance of a subpoena to Google under Rule 45 of the Federal Rules of Civil

Procedure, demanding the following production of documents and information in order to

determine the identity of the JOHN DOE Defendants:

> 1.      All Documents, records, or other information sufficient to identify the account holder for each email account identified in Appendix A, including but not limited to that Person's or entity's full name, physical address, other email address provided to you by that Person, telephone number, account information, account sign-up records, account activity, payment details (present and historical), history of contact information, and any other information passively collected by you about that Person or entity (e.g., IP address, browser and MAC information).

> 2.      All Documents, records, or other information concerning any and all email messages from January 1, 2015 to the present sent from or received by the email addresses identified in Appendix A including but not limited to, any and all active and/or archived email messages exchanged between these email accounts and the header information associated with said email messages; any and all SMTP logs associated with said email messages; IP connection logs (present and historical) associated with said email messages; IP connection logs (present and historical) associated with said email messages; and any other information actively or passively connected by you about any and all email messages exchanged (e.g., IP address, browser, and MAC information).

> 3.      All Documents, records, or other information sufficient to show the header information, including but not limited to all IP addresses in the header, of all emails sent from or received by each email account identified in Appendix A from January 1, 2015 to the present.

> 4.      Documents, records, or other information sufficient to show any other information actively or passively collected by you, including but not limited to IP addresses, browser information and MAC information, associated with each email account identified in Appendix A from January 1, 2015 to the present.

(Dkt. 10-3.)

On June 16, 2020, this Court denied NCS Pearson's Motion for Leave to Conduct Expedited Third-Party Doe Discovery (Dkt. 6) without prejudice.  (*See* Dkt. 13.)  The Court denied the motion for three separate reasons.  First, the Court found that Plaintiff had not sufficiently set forth a prima facia case with respect to the elements of its claims against the JOHN DOES, especially in light of the fact that the Court did not have all of the offending emails from each JOHN DOE that the Complaint was based on and Plaintiff had not explained how those emails specifically met the elements of at least one claim as to each JOHN DOE.  (*Id.* at 13.)  Second, the Court found that any renewed motion needed to outline all attempts, using declarations, to contact each of the JOHN DOE defendants.  (*Id.* at 15 n.3.)  Third, the Court concluded that the requests to Google were overly broad, as the requests went beyond merely seeking information regarding the identity of the JOHN DOES.  (*Id.* at 14.)

NCS Pearson subsequently filed the present renewed Motion for Leave to Conduct Expedited Third-Party Doe Discovery seeking relief from this Court in the form of the issuance of a subpoena to Google under Rule 45 of the Federal Rules of Civil Procedure, demanding the following more limited production of documents and information in order to determine the identity of specified JOHN DOE email accounts:

> 1.    All Documents, records, or other information sufficient to identify the account holder for each email account identified in Appendix A, including but not limited to that Person's or entity's full name, physical address, other email address provided to you by that Person, telephone number, account information, account sign-up records, account activity, payment details (present and historical), history of contact information, and any other information passively collected by you about that Person or entity (e.g., IP address, browser and MAC information).

2.     Documents, records, or other information sufficient to show any other information actively or passively collected by you, including but not limited to IP addresses, browser information and MAC information, associated with each email account identified in Appendix A from January 1, 2015 to the present.

(Dkt. 18-1 at 5-6.)  NCS Pearson further requests the authority to issue limited follow-up discovery, if necessary, on the leads provided by Google.  (Dkt. 16 at 18.)

## II.     LEGAL STANDARD

Rule 26(d) of the Federal Rules of Civil Procedure prohibits a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).  While the Eighth Circuit has not ruled on a standard governing whether early discovery is appropriate, district courts within the Eighth Circuit "generally utilize a 'good cause' standard" that considers the five following factors in deciding whether to permit early discovery using subpoenas:

(1) the concreteness of the plaintiff's showing of a prima facie claim of actionable harm, (2) the specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) the need for the subpoenaed information to advance the claim, and (5) the objecting party's expectation of privacy.

*Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 555-56 (D. Minn. 2019) (citations omitted).  This test is meant to protect anonymous speech affected by an order of this Court, given that it may implicate protected speech under the First Amendment.  *See E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018, 1024 (D. Minn. 2016).  "The party seeking the discovery bears the burden of showing good cause, and the subject matter of the request should be narrowly tailored in scope."  *Ensor v. Does 1-*

*15*, No. A-19-CV-00625-LY, 2019 WL 4648486, at *1 (W.D. Tex. Sept. 23, 2019)

(quotation marks and citation omitted). Given this legal standard, the Court examines the

propriety of Plaintiff's renewed request for early discovery.

## III.    ANALYSIS

### A.    Prima Facie Claim

With respect to the prima facie requirement, courts in this District have concluded

that:

> [T]he plaintiff **must produce** prima facie support for all of the elements of
> his or her case that are within his or her control. Requiring at least that much
> ensures that the plaintiff is not merely seeking to harass or embarrass the
> speaker or stifle legitimate criticism.

*E. Coast Test Prep*, 167 F. Supp. 3d at 1025 (emphasis added) (citing *Doe I v.*

*Individuals*, 561 F. Supp. 2d 249, 256 (D. Conn. 2008)) (quotation marks and citation

omitted); *see also SaleHoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1216 (W.D.

Wash. 2010) ("Next, the plaintiff must, in general, allege a facially valid cause of action

and produce prima facie evidence to support all of the elements of the cause of action

within his or her control."). Generally, prima facie support is "'the establishment of a

legally required rebuttable presumption' or where 'a party's production of enough

evidence allows the fact-trier to infer the fact at issue and rule in the party's favor.'"

*Devin v. Schwan's Home Servs., Inc.*, No. CIV. 04-4555 RHKAJB, 2005 WL 1323919, at

*3 (D. Minn. May 20, 2005) (quoting Black's Law Dictionary 1228 (8th ed. 2004))

(generally defining a prima facie case) (cleaned up).

As instructed by the Court, NCS Pearson provided the emails that it claims meet its prima facie burden with respect to the claims asserted in the Complaint for the email accounts at issue.  (*See* Dkt. 17 ¶ 16, Dkts. 17-1 through 17-22.)  The Court has reviewed the emails and the arguments of Plaintiff (Dkt. 16) and finds that NCS Pearson has met its prima facie burden at least with respect to its Lanham Act claim.[3]  *See Am. Italian*

---

[3]      The Court does not reach the issue of whether Plaintiff has met its prima facie burden with respect to its defamation and tortious interference claims given the possible statute of limitations issues as to a number of the JOHN DOES (assuming that Minnesota law applies), since the dates of the emails at issue go at back as early as 2015.  *See Issaenko v. Univ. of Minn.*, 57 F. Supp. 3d 985, 1029 (D. Minn. 2014) (citing Minn. Stat. § 541.07(1); *Church of Scientology of Minn. v. Minn. State Med. Ass'n Found.*, 264 N.W.2d 152, 154-55 (Minn. 1978)) (finding that under Minnesota law, a two-year statute of limitations applies to claims for defamation from the date of the publication); *see also Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1068 (8th Cir. 2004) (Minnesota state law claims are commenced for the purposes of statute of limitations on the date of service); *Willis Elec. Co. v. Polygroup Macau Ltd. (BVI)*, 437 F. Supp. 3d 693, 706 (D. Minn. 2020) ("Under Minnesota law, defamation claims are subject to a two-year statute of limitations.  Minn. Stat. § 541.07(1).  This limitation period also applies to tortious interference with business relationships when the alleged interference was 'by means of defamation.'") (quoting *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775, 793 (1975)).  The Court also notes that as to the Lanham Act claims asserted in this case, a majority of courts within the District of Minnesota have concluded that such claims are subject to a six-year statute of limitations, and not the two-year limitations period applicable to defamation claims, even if the claims were predicated on allegedly defamatory conduct.  *See Willis Elec. Co.*, 437 F. Supp. 3d at 706 (citations omitted).  With respect to the alleged violation of the CAN-SPAM Act of 2003, 15 U.S.C. § 7701 et seq., courts have found that in order to have standing to bring such a claim a Plaintiff must be an "internet access service" provider.  *See* 15 U.S.C. § 7706(g); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1049 (9th Cir. 2009); *XMission, L.C. v. Click Sales, Inc.*, No. 2:17CV1287DAK, 2019 WL 1574810, at *8 (D. Utah Apr. 11, 2019), *appeal dismissed sub nom.*, No. 19-4068, 2019 WL 10980535 (10th Cir. Dec. 11, 2019) (dealing with false email headers and finding that "customers have no private right of action under CAN-SPAM, only a bona fide internet access service provider can bring an action.").  There is no assertion that Plaintiff is an internet access service provider.

*Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390 (8th Cir. 2004) (citations omitted) (listing the elements of a Lanham Act claim as (1) a false statement of fact by a defendants about another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement) (citation omitted).  The emails sent via interstate commerce at issue in this case set forth false statements regarding NCS Pearson's services and products to its customers, government officials, and the media, which, as alleged, are likely to influence purchasing decisions and cause harm to NCS Pearson.

## B.    Specificity of Requests

Courts in this District have concluded that a request for early discovery related to John Doe Defendants is sufficiently specific where it only seeks evidence related to the identity of these individuals.  *See Strike 3 Holdings, LLC*, 330 F.R.D. at 556 (quoting *Strike 3 Holdings, LLC v. John Doe*, No. 18-cv-774 (DWF/DTS), 2018 WL 4210202 (D. Minn. Sept. 4, 2018)) ("'Plaintiff's discovery request is specific because it seeks only Defendant's name and address.'").  The Court finds that the revised document requests as part of the proposed subpoena (Dkt. 18-1 at 4-5) are sufficiently tailored to obtain the identity of the individuals associated without the target email accounts.

While NCS Pearson also seeks permission to conduct follow-up discovery, the Court denies this request without prejudice.  NCS Pearson may seek further permission

from the Court to conduct additional discovery consistent with the Federal Rules of Civil Procedure.

## C.    Remaining Factors

The Court is satisfied that Plaintiff needs to identify the JOHN DOES for its action to proceed, given that the Defendants cannot be identified without the discovery.  It appears that Google will not comply with Plaintiff's requests for information without a Court order (Dkt. 10-1; Dkt. 10-2), and NCS has adequately set forth its efforts, to no avail, to identify the JOHN DOES (Dkt. 17 ¶¶ 6-16).

While this Court is sensitive to the privacy interests of the JOHN DOES, the Court will put in place a protective order and other measures as set forth below to protect information that could be revealed with respect to possible innocent actors.

## C.    Conclusion

For all these reasons, the Court grants the renewed Motion subject to the conditions set forth below.

## IV.    <u>ORDER</u>

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.      NCS Pearson, Inc.'s Renewed Motion for Leave to Conduct Expedited Third-Party Doe Discovery (Dkt. 14) is **GRANTED** as follows:

   a.    Plaintiff may serve a subpoena pursuant to Federal Rule of Civil Procedure 45 on Google consistent with **Exhibit A** to this Order.

   b.    Google shall have fourteen (14) calendar days after service of the subpoena to notify the email subscriber associated with account listed in the Appendix A to the subpoena that his or her identity has been subpoenaed by Plaintiff.  The subscriber whose identity has

been subpoenaed shall then have forty-five (45) calendar days from the date of the notice to seek a protective order or file any other responsive pleading. Google may also seek a protective order or an order to quash if it determines there is a legitimate basis for doing so during this same time period.

    c.    Plaintiff shall serve a copy of this Order and copy of the Protective Order (Dkt. 27) with any subpoena obtained and served pursuant to this Order to Google. Google, in turn, must provide a copy of the subpoena, this Order, and the Protective Order along with the required notice to the user whose identity is sought pursuant to this Order. No other discovery is authorized at this time.

    d.    If the forty-five (45) day period lapses without Google or a Doe Defendant contesting the subpoena, Google shall have fourteen (14) days to produce the subpoenaed information to Plaintiff. Additionally, if Google or any Doe Defendant files a motion to quash or modify the subpoena, then Google may not turn over any information of said Doe Defendant to Plaintiff until this Court rules on any such motion.

    e.    Plaintiff shall not publicly disclose any information produced via the subpoena until the possible Doe Defendants have had the opportunity to file a motion with the Court to be allowed to proceed in this litigation anonymously and that motion is ruled on by the Court. If a possible Doe Defendant fails to file a motion for leave to proceed anonymously within forty-five (45) calendar days after his or her information is disclosed to Plaintiff's counsel, this limited protective order will expire. The protections afforded by the Protective Order (Dkt. 27) shall remain. If a possible Doe Defendant includes identifying information in his or her request to proceed anonymously, the Court finds good cause to order the papers temporarily filed under seal until the Court has the opportunity to rule on the request and to consider whether such materials should remain under seal.

2.    Plaintiff may seek further permission from the Court to conduct additional

discovery consistent with the Federal Rules of Civil Procedure to the extent appropriate.

DATED: November 10, 2020 *s/Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

# EXHIBIT A

## EXHIBIT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, you are hereby requested to produce and allow inspection and copying of the following documents and things requested herein at the place, date and time specified in the attached subpoena, or at such other place, date and time as may be agreed to, in accordance with the Federal Rules of Civil Procedure and the following Definitions and Instructions.

## Definitions

These terms shall have the following definitions as used in this document unless a contrary meaning clearly appears from the context in which the term is used:

1.      "Document(s)" includes all document and things defined by Fed R Civ P 34 and means any writings and includes, without limitation, all written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, non-identical copies, and drafts, and both sides thereof, including, without limitation:  letters, correspondence, papers, memoranda, contracts, agreements, books, journals, ledgers, statements, reports, studies, bills, billings, invoices, worksheets, jottings, projections, notes, abstracts, advertisements, drawings, audits, charges, balance sheets, income statements, magazine articles, newspaper or periodical articles, annual reports, public filings, analyst reports, checks, diagrams, blueprints, diaries, calendars, logs, recordings, instructions, lists, minutes of meetings, orders, resolutions, telegrams, wires, cables, telexes, messages, resumes, summaries, tabulations, tallies, statistical analyses, tapes, computer tapes, tape recordings, computer printouts, input/output computer systems, e-mails, and all other informal or formal writing or tangible things on which any handwriting, typing, printing, or sound is recorded or reproduced, and any and all attachments, amendments or supplements to all of the foregoing, whether prepared by a party or another person.  If necessary, all documents must be translated through detection or decoding device into useable form.  "Documents"

1

includes every document known to you, every document that can be located or discovered by reasonably diligent efforts on your part and specifically includes, but is not limited to, those documents in your control, possession or custody, wherever such documents are located.

2.     "Communication(s)" means any transmission or exchange of information, opinions, or thoughts, whether orally, in writing or otherwise, including but not limited to reports, mailings, conversations, meetings, letters, notes and telegraphic, facsimile, recordings, telex or computer-assisted electronic messages.

3.     "Person" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.  The singular of the term includes, where applicable, the plural and vice versa.

4.     "You" or "your" refers to Google, Inc. and includes any and all of its present or former subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, attorneys, consultants, and all other persons or entities acting or purporting to act in whole or in part on behalf of or in the interests of Google, Inc.

5.     The terms "concern," "concerns," and "concerning" shall mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, and/or constituting (in whole or in part), as the context makes appropriate.

6.     "Each" and "every" as used herein shall mean "each and every."

7.     "Any" as used herein means any and all.

8.     "Identity" of a person means the person's name, current business address, current home address, or, if unknown, the last-known business and home address, any and all known phone numbers, email addresses, instant messaging addresses and any other information that actually or potentially identifies the person or reflects where they

reside.

### **Instructions**

1.      In responding to the following requests, furnish all documents within your possession, custody, or control as well as all documents within the possession, custody, or control of your agents, representatives, employees, attorneys, or any other person or entity acting on your behalf. These Requests call for the production of originals, identical copies if originals are unavailable, and non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of the documents described in these Requests. If you cannot fully respond to the following requests after exercising due diligence to secure the documents requested thereby, so state, and specify the portion of each request that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested documents.

2.      Documents produced in response to these Requests shall be organized and labeled to correspond with the categories in these Requests or shall be produced as they are kept in the usual course of business. File folders with tabs or labels or directories of filed identifying documents called for by these requests must be produced intact with such documents.

3.      Any documents produced in electronic form shall be produced together with any data, software or other tools necessary to permit the demanding party to locate, identify and read the responsive information contained therein as readily as can the responding party. Please produce any electronic documents in a readily usable or understandable form that does not reduce search-ability of the data and includes or retains any metadata associated with those documents (e.g., emails should be produced in a format that preserves full header information).

4.      If you withhold any responsive documents as privileged or otherwise protected from disclosure, with respect to each document, identify:

(a)     all persons making or receiving the privileged or protected communication;

(b)     the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication;

(c)     the date of the communication; and

(d)     a description of the document or thing sufficient to identify the basis of the claim privilege or protection claimed.

5.      The relevant time period for each Request shall be January 1, 2015 through the present.

6.      To the extent permitted and authorized by law, these Requests shall be deemed continuing so as to require further and supplemental production if you receive, discover, become aware of, or create additional responsive documents between the time of initial production and the time of trial.

7.      In responding to the following requests, please search any and all active or passive sources of email relating to the email accounts listed in Appendix A, including but not limited to active sources, repositories for archived email and any sources at which any cached, whole or partial information regarding emails sent to the identified accounts may be found.  Please preserve all such sources of information relating to emails sent to the email accounts listed in Appendix A.

8.      Please preserve all Documents responsive to these requests.

**<u>Documents Requested</u>**

1.      All Documents, records, or other information sufficient to identify the account holder for each email account identified in Appendix A, including but not limited to that Person's or entity's full name, physical address, other email address provided to you by that Person, telephone number, account information, account sign-up records,

account activity, payment details (present and historical), history of contact information, and any other information passively collected by you about that Person or entity (e.g., IP address, browser and MAC information).

2.      Documents, records, or other information sufficient to show any other information actively or passively collected by you, including but not limited to IP addresses, browser information and MAC information, associated with each email account identified in Appendix A from January 1, 2015 to the present.

APPENDIX A

| Email address | Claimed Owner(s) |
|---|---|
| xconifyacademy@gmail.com | Tarique Ahmed, Co-Partner of the Xconify Academy |
| newhorizonslearingcentre@gmail.com | Tony Albert, New Horizons Learning Centre East Syracuse |
| wahshaikhy@gmail.com | Wahjid S, BAS-ICT |
| pradyutmishraiijt@gmail.com | Pradyut Mishra |
| neerajawasthinewhorizon@gmail.com | Neeraj Awasthi |
| prudentworldtech@gmail.com | Charles Truman, Logitrain |
| surynarayanbiz@gmail.com | Suporte Informatica |
| sachinsonigimit@gmail.com | Sachin Soni |
| sanjeevshris@gmail.com | Sanjeev Shrivastava |
| sminternetwork@gmail.com | Mohd Arif |
| swapnikale1@gmail.com | Swapnil Kale |
| gowrisit007@gmail.com | Gowri S |
| anuragsinsinwarhorizon@gmail.com | Anurag Sinsinwar |
| gauravascentcollege@gmail.com | Gaurav Kalra |
| jamborieducation@gmail.com | Jamboree Education |
| mon.agrawalkaur@gmail.com | Monika Agrawal |
| prasana.rks@gmail.com | P R Kumar |
| 360informer@gmail.com | Pravin Gupta |
| shafaqmla@gmail.com | Shafaq Moinwala |

|  | Benny M.O. |
|---|---|
| ceosenthilkumar@gmail.com | Senthil Kumar, Kalvi Institutes |
| netexpertsol@gmail.com | Shaila Badar |